UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| BRIAN E. C.,[1] | ) | CIVIL ACTION NO. 4:23-CV-964 |
| Plaintiff | ) | |
| | ) | |
| v. | ) | |
| | ) | (ARBUCKLE, M.J.) |
| COMMISSIONER OF SOCIAL | ) | |
| SECURITY, | ) | |
| Defendant | | |

**MEMORANDUM OPINION**

## I.    INTRODUCTION

Plaintiff Brian E. C., an adult who lives in the Middle District of Pennsylvania, seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his application for supplemental security income under Title XVI of the Social Security Act. Jurisdiction is conferred on this Court pursuant to 42 U.S.C. §1383(c)(3)(incorporating 42 U.S.C. §405(g) by reference).

This matter is before me upon consent of the parties pursuant to 28 U.S.C. § 636(c) and Rule 73 of the Federal Rules of Civil Procedure. After reviewing the parties' briefs, the Commissioner's final decision, and the relevant portions of the

---

[1] To protect the privacy interests of plaintiffs in social security cases, we have adopted the recommendation of the Committee on Court Administration and Case Management of the Judicial Conference of the United States that federal courts should refer to plaintiffs in such cases by their first name and last initial.

certified administrative transcript, the Court finds the Commissioner's final decision is supported by substantial evidence. Accordingly, the Commissioner's final decision will be AFFIRMED.

## II.    BACKGROUND & PROCEDURAL HISTORY

On August 17, 2021, Plaintiff protectively filed an application for supplemental security income under Title XVI of the Social Security Act. (Admin. Tr. 14).  In this application, Plaintiff alleged he became disabled on October 17, 2015, when he was 40 years old, due to the following conditions: PTSD; chronic post traumatic headache; psychiatric problem; head injury; cluster headaches; adjustment disorder with depressed mood; anxiety; degenerative disc disease; major depressive disorder; and insomnia. (Admin. Tr. 14, 35, 704). Plaintiff alleges that the combination of these conditions affects his ability to lift; squat; bend; stand; reach; walk; kneel; climb stairs; complete tasks; concentrate; understand; follow instructions; and get along with others. (Admin. Tr. 730). Plaintiff has at least a high school education. (Admin. Tr. 35). Plaintiff has no past relevant work. (Admin. Tr. 35).

On December 14, 2021, Plaintiff's application was denied at the initial level of administrative review. (Admin. Tr. 14). On February 8, 2022, Plaintiff's

application was denied upon reconsideration. (Admin. Tr. 14). On February 22, 2022, Plaintiff requested an administrative hearing. (Admin. Tr. 14).

On May 31, 2022, Plaintiff appeared and testified during a hearing before Administrative Law Judge Michele Stolls (the "ALJ"). (Admin. Tr. 563-600). On September 20, 2022, the ALJ issued a decision denying Plaintiff's application for benefits. (Admin. Tr. 14-37). On September 18, 2022, Plaintiff requested that the Appeals Council of the Office of Disability Adjudication and Review ("Appeals Council") review the ALJ's decision. (Admin. Tr. 679). Along with his request, Plaintiff submitted new evidence that was not available to the ALJ when the ALJ's decision was issued. (Admin. Tr. 2).

On May 31, 2023, the Appeals Council denied Plaintiff's request for review. (Admin. Tr. 1-4). On June 12, 2023, Plaintiff filed a complaint in the district court. (Doc. 1). As relief, Plaintiff requests that the Court declare him disabled and award benefits or remand his case for a new hearing. (Doc. 1; Doc. 34, p. 5).

On August 14, 2023, the Commissioner filed an answer. (Doc. 25). In the answer, the Commissioner maintains that the decision denying Plaintiff's application was made in accordance with the law and is supported by substantial evidence. (Doc. 25). Along with her answer, the Commissioner filed a certified transcript of the administrative record. (Doc. 26).

Plaintiff's brief (Doc. 34), the Commissioner's brief (Doc. 41), and Plaintiff's reply (Doc. 45 ) have been filed. This matter is now ready to decide.

## III.   LEGAL STANDARDS

Before looking at the merits of this case, it is helpful to restate the legal principles governing Social Security Appeals, including the standard for substantial evidence review, and the guidelines for the ALJ's application of the five-step sequential evaluation process.

### A.   SUBSTANTIAL EVIDENCE REVIEW – THE ROLE OF THIS COURT

A district court's review of ALJ decisions in social security cases is limited to the question of whether the findings of the final decision-maker are supported by substantial evidence in the record.[2] Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."[3] Substantial evidence is less than a preponderance of the evidence but more than a mere scintilla.[4] A single piece of evidence is not substantial if the ALJ ignores countervailing evidence or fails to resolve a conflict in the record.[5] In an adequately developed factual record,

---

[2] *See* 42 U.S.C. § 1383(c)(3); *Johnson v. Comm'r of Soc. Sec.*, 529 F.3d 198, 200 (3d Cir. 2008); *Ficca v. Astrue*, 901 F. Supp. 2d 533, 536 (M.D. Pa. 2012).

[3] *Pierce v. Underwood*, 487 U.S. 552, 565 (1988).

[4] *Richardson v. Perales*, 402 U.S. 389, 401 (1971).

[5] *Mason v. Shalala*, 994 F.2d 1058, 1064 (3d Cir. 1993).

substantial evidence may be "something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent [the ALJ's decision] from being supported by substantial evidence."[6] When determining if the Commissioner's decision is supported by substantial evidence under sentence four of 42 U.S.C. § 405(g), the court may consider any evidence that was in the record that was made before the ALJ.[7]

The Supreme Court has underscored the limited scope of district court review in this field, noting that:

> The phrase "substantial evidence" is a "term of art" used throughout administrative law to describe how courts are to review agency factfinding. *T-Mobile South*, *LLC* v. *Roswell*, 574 U.S. ——, ——, 135 S.Ct. 808, 815, 190 L.Ed.2d 679 (2015). Under the substantial-evidence standard, a court looks to an existing administrative record and asks whether it contains "sufficien[t] evidence" to support the agency's factual determinations. *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 83 L.Ed. 126 (1938) (emphasis deleted). And whatever the meaning of "substantial" in other contexts, the threshold

---

[6] *Consolo v. Fed. Maritime Comm'n*, 383 U.S. 607, 620 (1966).

[7] *Matthews v. Apfel*, 239 F.3d 589, 593 (3d Cir. 2001) ("when the Appeals Council has denied review the district court may affirm, modify, or reverse the Commissioner's decision, with or without a remand based on the record that was made before the ALJ (Sentence Four review)."). The claimant and Commissioner are obligated to support each contention in their arguments with specific reference to the record relied upon. L.R. 83.40.4; *United States v. Claxton*, 766 F.3d 280, 307 (3d Cir. 2014) ("parties . . . bear the responsibility to comb the record and point the Court to the facts that support their arguments."); *Ciongoli v. Comm'r of Soc. Sec.*, No. 15-7449, 2016 WL 6821082 (D.N.J. Nov. 16, 2016) (noting that it is not the Court's role to comb the record hunting for evidence that the ALJ overlooked).

for such evidentiary sufficiency is not high. Substantial evidence, this Court has said, is "more than a mere scintilla." *Ibid.*; see, *e.g.*, *Perales*, 402 U.S. at 401, 91 S.Ct. 1420 (internal quotation marks omitted). It means—and means only—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison*, 305 U.S. at 229, 59 S.Ct. 206. *See Dickinson v. Zurko*, 527 U.S. 150, 153, 119 S.Ct. 1816, 144 L.Ed.2d 143 (1999) (comparing the substantial-evidence standard to the deferential clearly-erroneous standard).[8]

To determine whether the final decision is supported by substantial evidence, the court must decide not only whether "more than a scintilla" of evidence supports the ALJ's findings, but also whether those findings were made based on a correct application of the law.[9] In doing so, however, the court is enjoined to refrain from trying to re-weigh evidence and "must not substitute [its] own judgment for that of the fact finder."[10]

Furthermore, meaningful review cannot occur unless the final decision is adequately explained. As the Court of Appeals has noted on this score:

---

[8] *Biestek v. Berryhill*, 587 U.S. 97, 102-03 (2019).

[9] *See Arnold v. Colvin*, No. 3:12-CV-02417, 2014 WL 940205, at *1 (M.D. Pa. Mar. 11, 2014) ("[I]t has been held that an ALJ's errors of law denote a lack of substantial evidence.") (alterations omitted); *Burton v. Schweiker*, 512 F. Supp. 913, 914 (W.D. Pa. 1981) ("The Secretary's determination as to the status of a claim requires the correct application of the law to the facts."); *see also Wright v. Sullivan*, 900 F.2d 675, 678 (3d Cir. 1990) (noting that the scope of review on legal matters is plenary); *Ficca*, 901 F. Supp. 2d at 536 ("[T]he court has plenary review of all legal issues . . . .").

[10] *Zirnsak v. Colvin*, 777 F.3d 607, 611 (3d Cir. 2014).

In *Burnett*, we held that an ALJ must clearly set forth the reasons for his decision. 220 F.3d at 119. Conclusory statements . . . are insufficient. The ALJ must provide a "discussion of the evidence" and an "explanation of reasoning" for his conclusion sufficient to enable judicial review. *Id.* at 120; *see Jones v. Barnhart*, 364 F.3d 501, 505 & n. 3 (3d Cir. 2004). The ALJ, of course, need not employ particular "magic" words: "*Burnett* does not require the ALJ to use particular language or adhere to a particular format in conducting his analysis." *Jones*, 364 F.3d at 505.[11]

## B.    STANDARDS GOVERNING THE ALJ'S APPLICATION OF THE FIVE-STEP SEQUENTIAL EVALUATION PROCESS

To receive benefits under the Social Security Act by reason of disability, a claimant must demonstrate an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months."[12] To satisfy this requirement, a claimant must have a severe physical or mental impairment that makes it impossible to do his or her previous work or any other substantial gainful activity that exists in the national economy.[13] Unlike disability insurance benefits under Title II of the Social Security Act, "[i]nsured status is irrelevant in determining a claimant's

---

[11] *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 504 (3d Cir. 2009).

[12] 42 U.S.C. § 1382c(a)(3)(A); *see also* 20 C.F.R. § 416.905(a).

[13] 42 U.S.C. § 1382c(a)(3)(B); 20 C.F.R. § 416.905(a).

eligibility for supplemental security income benefits" under Title XVI of the Social Security Act.[14]

In making this determination at the administrative level, the ALJ follows a five-step sequential evaluation process.[15] Under this process, the ALJ must sequentially determine: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals a listed impairment; (4) whether the claimant is able to do his or her past relevant work; and (5) whether the claimant is able to do any other work, considering his or her age, education, work experience and residual functional capacity ("RFC").[16]

Between steps three and four, the ALJ must also assess a claimant's RFC. RFC is defined as "that which an individual is still able to do despite the limitations caused by his or her impairment(s)."[17] In making this assessment, the ALJ considers all the claimant's medically determinable impairments, including any non-severe impairments identified by the ALJ at step two of his or her analysis.[18]

---

[14] *Snyder v. Colvin*, No. 3:16-CV-01689, 2017 WL 1078330, at *1 (M.D. Pa. Mar. 22, 2017).

[15] 20 C.F.R. § 416.920(a).

[16] 20 C.F.R. § 416.920(a)(4).

[17] *Burnett v. Comm'r of Soc. Sec.*, 220 F.3d 112, 121 (3d Cir. 2000) (citations omitted); *see also* 20 C.F.R. § 416.920(e); 20 C.F.R. § 416.945(a)(1).

[18] 20 C.F.R. § 416.945(a)(2).

At steps one through four, the claimant bears the initial burden of demonstrating the existence of a medically determinable impairment that prevents him or her from engaging in any of his or her past relevant work.[19]  Once this burden has been met by the claimant, it shifts to the Commissioner at step five to show that jobs exist in significant number in the national economy that the claimant could perform that are consistent with the claimant's age, education, work experience and RFC.[20]

## IV.    DISCUSSION

### A.    THE ALJ'S DECISION DENYING PLAINTIFF'S APPLICATION

Shortly after Plaintiff's application was denied upon reconsideration, he was in a severe motor vehicle accident on February 12, 2022, and sustained numerous injuries. (Doc. 34, pp. 1-3). Accordingly, when evaluating Plaintiff's application, the ALJ evaluates the application from the application date to February 11, 2022, and from February 12, 2022 to the date of the ALJ's decision.

In her September 2022 decision, the ALJ evaluated Plaintiff's application at steps one through five of the sequential evaluation process.

---

[19]  42 U.S.C. § 1382c(a)(3)(H)(i) (incorporating 42 U.S.C. § 423(d)(5) by reference); 20 C.F.R. § 416.912; *Mason*, 994 F.2d at 1064.

[20]  20 C.F.R. § 416.912(b)(3); *Mason*, 994 F.2d at 1064.

At step one, the ALJ found that Plaintiff did not engage in substantial gainful activity at any point between August 17, 2021 (Plaintiff's alleged onset date) and September 20, 2022 (the date the ALJ decision was issued) ("the relevant period"). (Admin. Tr. 16-17).

At step two, the ALJ found that, from August 17, 2021 through February 11 2022, Plaintiff had the following medically determinable severe impairments: cervical degenerative disc disease; asthma; chronic migraine/chronic post traumatic headache/cluster headache; post-traumatic stress disorder; unspecified schizophrenia spectrum and other psychotic disorder; schizophrenia; major depressive disorder; mood disorder; anxiety disorder/generalized anxiety disorder; adjustment disorder with depressed mood; suicidal ideations; and insomnia. (Admin. Tr. 17). The ALJ also found that in addition to the severe impairments listed above, Plaintiff had the following severe impairments from February 12, 2022 through the end of the relevant period: mesenteric hemorrhage (and status post exploratory laparotomy and repair of mesenteric and peritoneal hematoma); liver laceration; left chest wall contusion; left scapula fracture; mildly displaced intra articular fracture of the left lateral malleolus; intraarticular fracture of the left lateral cuneiform; minimally displaced intraarticular fracture of the right radial styloid (and status post open reduction internal fixation right wrist); mildly displaced left L4 transverse

process fracture; L5 compression fracture/deformity; left fourth rib fracture; acute

fractures of the first through fourth left metatarsals; lumbar degenerative disc

disease; and thoracolumbar levocurvature. (Admin. Tr. 17).

At step three, the ALJ found that, during the relevant period, Plaintiff did not

have an impairment or combination of impairments that met or medically equaled

the severity of an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.

(Admin. Tr. 18-24).

Between steps three and four, the ALJ assessed Plaintiff's RFC. The ALJ

found that, from August 17, 2021 through February 11, 2022, Plaintiff retained the

RFC to engage in light work as defined in 20 C.F.R. § 416.967(b) subject to the

following additional limitations:

> The individual is limited to no more than occasional postural
> maneuvers, such as stooping, kneeling, crouching, crawling, or
> climbing on ramps and stairs, but must avoid occupations that require
> climbing on ladders, ropes, and scaffolds. Further, the is limited to
> occupations that require no more than frequent balancing. Also, the
> claimant must avoid concentrated prolonged exposure to fumes, odors,
> dusts, gases, chemical irritants, environments with poor ventilation,
> temperature extremes, vibration, or extreme dampness and humidity,
> but must avoid exposure to hazards such as dangerous machinery and
> unprotected heights. The claimant must avoid exposure to occupations
> that present noise levels above a level 3 (which is moderate).
> Additionally, the claimant is limited to occupations that require the
> claimant to understand, remember, and carry out simple instructions,
> and make simple work-related decisions. Moreover, the claimant is
> limited to occupations that require the claimant to deal with occasional
> changes in a work setting. Lastly, the claimant is limited to occupations

> which require no more than occasional interaction with supervisors and
> coworkers and no interaction with members of the general public,
> although he can be in proximity to the public.

(Admin. Tr. 24). The ALJ then found that from February 12, 2022 through

September 20, 2022, Plaintiff retained the RFC to engage in sedentary work as

defined in 20 C.F.R. § 416.967(a) subject to the following additional limitations:

> The individual is limited to occupations that require no more than
> occasional pushing or pulling with the left lower extremity to include
> the operation of pedals. Further, the claimant is limited to occupations
> that require no more than occasional overhead reaching or pushing and
> pulling with the upper extremities, to include overhead work or the
> operation of hand levers. Also, the claimant is limited to no more than
> occasional postural maneuvers, such as stooping, kneeling, crouching,
> crawling, or climbing on ramps and stairs, but must avoid occupations
> that require climbing on ladders, ropes, and scaffolds. Further, the
> claimant is limited to occupations that require no more than frequent
> balancing. Also, the claimant must avoid concentrated prolonged
> exposure to fumes, odors, dusts, gases, chemical irritants, environments
> with poor ventilation, temperature extremes, vibration, or extreme
> dampness and humidity, but must avoid exposure to hazards such as
> dangerous machinery and unprotected heights. The claimant must
> avoid exposure to occupations that present noise levels above a level 3
> (which is moderate). Additionally, the claimant is limited to
> occupations that require the claimant to understand, remember, and
> carry out simple instructions, and make simple work-related decisions.
> Moreover, the claimant is limited to occupations that require the
> claimant to deal with occasional changes in a work setting. Lastly, the
> claimant is limited to occupations which require no more than
> occasional interaction with supervisors and coworkers and no
> interaction with members of the general public, although he can be in
> proximity to the public.

(Admin. Tr. 24-25).

At step four, the ALJ found that Plaintiff had no past relevant work. (Admin. Tr. 35). At step five, the ALJ found that, considering Plaintiff's age, education and work experience, Plaintiff could engage in other work that existed in the national economy. (Admin. Tr. 35-36). To support her conclusion, the ALJ relied on testimony given by a vocational expert during Plaintiff's administrative hearing. As to the light RFC applying from August 17, 2021, to February 11, 2022, the ALJ cited the following three (3) representative occupations: Hand Stuffer, DOT # 780.687-046; Price Marker, DOT # 209.587-034; and Inspector for Surgical Instruments, DOT #712.684-050. (Admin. Tr. 36). As to the sedentary RFC applying from February 12, 2022, to September 20, 2022, the ALJ cited the following three (3) representative occupations: Addresser, DOT # 209-587-010; Lens Inserter, DOT # 713.687-026; and Table Worker, DOT # 739.687-182. (Admin. Tr. 36).

### B.    WHETHER REMAND PURSUANT TO SENTENCE SIX OF 42 U.S.C. §405(G) IS APPROPRIATE

It is difficult to determine what Plaintiff's argument for an award of benefits or remand is. Plaintiff contends that the ALJ ruled on his application too quickly, without allowing more time for him to seek follow-up care and discover what permanent injuries he sustained from the car accident. Plaintiff submitted numerous additional records to the Appeals Council and has done the same in this Court. Plaintiff has filed 45 exhibits of additional evidence to the docket and included

additional records with his complaint, brief in support and reply brief.[21] Given Plaintiff's assertion that his application was ruled on too quickly without the benefit of further medical records as he recovered and his continuous submission of additional evidence, we interpret Plaintiff as arguing that his case needs remanded for consideration of new evidence pursuant to sentence six of 42 U.S.C. § 405(g).

It is axiomatic that "evidence that was not before the ALJ cannot be used to argue that the ALJ's decision was not supported by substantial evidence."[22] However, sentence six of 42 U.S.C. § 405(g) provides that "[t]he court may . . . at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding[.]" Accordingly, if "the claimant seeks to rely on evidence that was not before the ALJ, the district court may remand to the Commissioner but only if the evidence is new and material and if there was good cause why it was not previously presented to the ALJ (Sentence Six review)."[23]

> To remand a case based on new evidence which was not before the ALJ, the Court must determine that the following criteria have been met: First, the evidence must be new and not merely cumulative of what is in the record. Second, the evidence must be material. This means that

---

[21] *See* Docs. 7-11; 14, 15, 17-24, 27, 29-33, 35-39, 41-44, 46-61.

[22] *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001).

[23] *Id.* at 593.

it must be relevant and probative, and there must be a reasonable possibility that the new evidence would have changed the outcome of the determination. Third, the plaintiff must demonstrate good cause for not having incorporated the new evidence into the administrative record. *See Matthews*, 239 F.3d at 594; *Szubak v. Secretary of Health & Human Services*, 745 F.2d 831, 833 (3d Cir. 1984).[24]

Generally,

> evidence is "new" if it was "not in existence or available to the Plaintiff at the time of the administrative proceeding" and not merely cumulative of the evidence of record. *Sullivan* [*v. Finkelstein*], 496 U.S. [617,] 626 [(1990)]; *see also Melkonyan v. Sullivan*, 501 U.S. 89, 100 (1991); *Szubak v. Secretary of Health and Human Services*, 745 F.2d 831, 833 (3d Cir. 1984). Evidence is "material" if it is relevant and probative. *Szubak*, 745 F.2d at 833. An implicit materiality requirement is that the evidence must relate to the period for which benefits were denied, and there must be a reasonable probability that the additional evidence will change the outcome of the decision. *Szubak*, 745 F.2d at 833. As for the "good cause" requirement, "[u]nder existing law the court itself ... has discretionary authority 'for good cause' to remand the case back to the ALJ." *Melkonyan*, 501 U.S. 89, 100 (1991).[25]

"So-called sixth-sentence remand is appropriate when the district court learns of evidence not in existence or available to the claimant at the time of the administrative proceeding that might have changed the outcome of that proceeding."[26]

---

[24] *McDonald v. O'Malley*, No. CV 22-1851, 2024 WL 896486, at *1 n.2 (W.D. Pa. Feb. 29, 2024).

[25] *Autar v. Kijakazi*, No. 3:22-CV-01347, 2023 WL 5961654, at *6 (M.D. Pa. Sept. 13, 2023).

[26] *Id.* (quoting *Sullivan v. Finkelstein*, 496 U.S. 617, 626 (1990)) (internal quotation marks omitted).

In this case, Plaintiff does not demonstrate how the additional evidence he wishes to have the ALJ review is new and not merely cumulative of the evidence of record that was in front of the ALJ. Even assuming that it was not cumulative and would qualify as new, Plaintiff fails to make any argument as to how any of the new evidence he has submitted is material. The evidence Plaintiff has submitted includes copies of diagnostic imaging, after visit summaries, a list of updated diagnoses, letters from Plaintiff's doctors, progress notes, documents showing upcoming appointments, prescription histories and discharge summaries.[27]

Again, "an implicit materiality requirement is that the evidence must relate to the period for which benefits were denied, and there must be a reasonable probability that the additional evidence will change the outcome of the decision."[28] Here, with the exception of the ALJ's decision and Pennsylvania State Police crash report, the evidence Plaintiff has submitted postdates the period for which benefits were denied. While some of the evidence may relate to conditions the ALJ found Plaintiff had during the relevant period, he does not show how the postdated evidence, that largely describes how he presented at the time of his medical appointments postdating the

---

[27] *See* Docs. 8-11; 15, 17-24, 27, 29-33, 35-39, 41-44, 46-61. Plaintiff also submitted as evidence a copy of the ALJ's unfavorable decision and a copy of the Pennsylvania State Police MVA report. (Docs. 7, 14).

[28] *Autar*, 2023 WL 5961654, at *6 (citing *Szubak v. Sec'y of Health and Hum. Servs.*, 745 F.2d 831, 833 (3d Cir. 1984)).

relevant period, his current list of medications, and upcoming appointments to address present symptoms, is probative of his functional limitations during the relevant period. Nor does it appear that any of the evidence Plaintiff has submitted is.

In particular, Plaintiff focuses on letters from his doctors that indicate he is unable to work and may remain unable to return to the workforce indefinitely. (Doc. 1-2, pp. 5-6; Doc. 34-1; Doc. 45-1). Plaintiff appears to believe that if the ALJ had considered these letters she would have found Plaintiff disabled based on his doctors' letters stating he is unable to work. (Doc. 34, pp. 3-4; Doc. 45 pp. 1-2). Plaintiff has not demonstrated a reasonable probability that consideration of the letters would change the outcome of the ALJ's decision. These letters do not address Plaintiff's functional capabilities during the relevant period. Instead, the letters indicate Plaintiff is unable to work and may remain unable to work indefinitely. *Id.* "It is well established that a physician's statement that a claimant is "disabled" or "unable to work" is not binding on the ALJ, as opinions as to whether a claimant is disabled is reserved to the Commissioner of Social Security."[29] Pursuant to the regulations the letters are neither inherently valuable nor persuasive.[30]  Plaintiff does

---

[29] *McDonald v. O'Malley*, No. CV 22-1851, 2024 WL 896486, at *1 n.2 (W.D. Pa. Feb. 29, 2024). *See* 20 C.F.R. § 416.920b.

[30] 20 C.F.R. § 416.920b.

not advance any other argument as to why these letters may change the outcome of the ALJ's decision. Plaintiff has therefore not demonstrated how these letters are likely to change the outcome of the decision.

Because Plaintiff has failed to show how the evidence he has submitted is material and likely to change the outcome of the ALJ's decision, he has failed to fulfill the statutory requirements for sentence six remand and no such remand is appropriate.

The Court cannot find any other cogent arguments in Plaintiff's brief.[31]

---

[31] To the extent Plaintiff complains that his hearing was not fair because he was somehow forced to proceed too soon after the car accident and so did not have enough time to recover or discover the long-term effects of his injuries, his claim is belied by the record. In February 2022, Plaintiff was mailed a letter explaining his hearing options due to Covid considerations. (Admin. Tr. 629). That letter advised Plaintiff that he could proceed with a telephonic or video hearing, or that if he did not consent to either a telephonic or video hearing, his hearing would be postponed until Social Security Administration offices reopened. *Id.* This letter therefore provided Plaintiff with an opportunity to delay the proceedings. Despite this, Plaintiff then chose to consent to a phone hearing. At the May 31, 2022, hearing Plaintiff was given another chance to postpone his hearing. (Admin. Tr. 568). The ALJ informed Plaintiff that due to his unrepresented status he could take advantage of a one-time postponement to find a representative. *Id.* Again, despite this, Plaintiff chose to proceed with his hearing. Following Plaintiff's hearing, the ALJ held the record open for approximately three months, and proffered the record to Plaintiff on September 6, 2022. (Admin. Tr. 813-814). In the proffer, the ALJ notified Plaintiff that he could submit, *inter alia*, additional records and that he could request a supplemental hearing. *Id.* Plaintiff did submit additional evidence after receiving the proffer, but did not request a supplemental hearing. Plaintiff had three opportunities to postpone or delay the ALJ's decision but chose not to do so. Given these

## V.    CONCLUSION

Accordingly, I find that Plaintiff's request for the Court to declare him disabled and award benefits or remand his case for a new hearing be DENIED as follows:

(1)    The Commissioner's final decision is AFFIRMED.

(2)    Final judgment in the Commissioner's favor will be issued separately.

(3)    An appropriate order will be issued.

Date: May 9, 2025                                    BY THE COURT

_s/William I. Arbuckle_
William I. Arbuckle
U.S. Magistrate Judge

---

opportunities and Plaintiff's decisions not to take advantage of them, he cannot now complain that he was forced to proceed.